Marvin WHITE, Individually on behalf of himself and all other resident citizens and qualified electors of Shelby County, Tennessee, similarly situated, Plaintiffs,

v.

Gentry CROWELL, Secretary of State of the State of Tennessee, et al., Defendants.

Dr. Clara BRAWNER and Roscoe McVae, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Gentry CROWELL, Secretary of State of the State of Tennessee, et al., Defendants.

Civ. Nos. C–76–205 and C–76–233.

United States District Court, W. D. Tennessee, W. D.

July 26, 1977.

G. Philip Arnold, Ratner, Sugarmon, Lucas, Salky & Henderson, Memphis, Tenn., Nathaniel R. Jones, New York City, for plaintiff in C–76–233.

Kenneth Herrell, Asst. Atty. Gen., State of Tenn., Nashville, Tenn., for defendants in both cases.

John L. Ryder, Laughlin, Halle, Regan, Clark & Gibson, Robert Walker, Heiskell, Donelson, Adams, Williams & Kirsch, Memphis, Tenn., for plaintiff in C–76–205.

Before PHILLIPS, Chief Circuit Judge, BROWN, Chief District Judge, and WELLFORD, District Judge.

PER CURIAM.

These are actions to effect a reapportionment as to three districts from which Senators are elected to the upper house of the Tennessee legislature and to effect a reapportionment as to three districts from which Representatives are elected to the lower house of the legislature. All are single-member districts and are located in Shelby County, Tennessee. Since the claims are so nearly parallel, they were consolidated for oral argument by the three-judge court that was impanelled to consider them, and, for the same reason, the claims can be resolved in this single opinion.

Plaintiffs base these actions on the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. §§ 1983 and 1988 and rely for jurisdiction on 28 U.S.C. §§ 1331 and 1343(3), and the court determines that jurisdiction is present.

The individuals bringing these actions seek only declaratory and injunctive relief,

but they, nevertheless, seek certifications as class actions under Rule 23(b)(2), F.R.C.P. Plaintiffs contend that class action certification is of importance even in this context because, without certification, their cases may become moot before final resolution. Since defendants, while opposing class certification in their answers, did not resist such class certification at argument and since certification of suitable classes will not affect plaintiffs' claims for attorneys' fees, this court will certify a class in each case.

In the case involving Senate districts 28, 29 and 32, a class is certified consisting of all persons living in such districts; and in the case involving House districts 90, 93 and 96, a class is certified consisting of all persons living in such districts.

Following the 1970 census, the Tennessee legislature sought to reapportion itself by adopting, with respect to each house of the legislature, a principal and an alternative plan. These plans came before a three-judge court at Nashville for consideration in the case of *Kopald v. Carr*, 343 F.Supp. 51 (M.D.Tenn.1972). In that case, it was conceded, as the court noted, that both principal plans were unconstitutional; the court then set out some substantial changes that would be necessary to make the alternative plans constitutional. Since, however, there was an upcoming election, the court actually ordered only slight changes in the alternative plans for that election and retained jurisdiction pending further action by the Tennessee legislature at its 1973 session. The legislature, in that session, adopted the court's plans as set out in the opinion and the 1974 election was held pursuant thereto.

In 1976, the legislature made the reapportionment changes at issue here, and these actions were thereupon instituted in May of that year. However, since the upcoming primary elections were to be held so soon thereafter, this court took no action at that time.

The reapportionment of Senate districts 28, 29 and 32 was effected by an amendment to TCA § 3–102, referred to in the record as the "Gillock Amendment." According to the 1970 census, the optimum population for Senate districts in Tennessee was 118,914. *Prior* to this amendment, the populations, population variance from the optimum, and percentage variance from the optimum were as follows:

| DISTRICT | POPULATION | POPULATION VARIANCE | PERCENTAGE VARIANCE |
|---|---|---|---|
| 28 | 120,834 | + 1920 | + 1.615 |
| 29 | 118,922 | + 8 | + 0.007 |
| 32 | 120,200 | + 1286 | + 1.081 |

*After* the amendment, these figures were as follows:

| DISTRICT | POPULATION | POPULATION VARIANCE | PERCENTAGE VARIANCE |
|---|---|---|---|
| 28 | 121,994 | + 3080 | + 2.590 |
| 29 | 122,843 | + 3929 | + 3.304 |
| 32 | 116,783 | − 2131 | − 1.792 |

As will be seen, the populations of these districts were closer to the optimum prior to the Amendment than they were after the Amendment. At the hearing, the only explanation or reason tendered to support this reapportionment was that Senator Gillock, an incumbent representing district 28, was considering moving his home to a precinct then outside his district and therefore it was necessary to reapportion these districts to bring such precinct into Senator Gillock's district.

The reapportionment of House districts 90, 93 and 96 was effected by an amendment to TCA § 3–103, referred to in the record as "HB 1407." According to the 1970 census, the optimum population for House districts in Tennessee was 39,638. *Prior* to this enactment, the populations, population variances from the optimum and percentage variance from the optimum were as follows:

| DISTRICT | POPULATION | POPULATION VARIANCE | PERCENTAGE VARIANCE |
|---|---|---|---|
| 90 | 39,641 | + 3 | .00 |
| 93 | 39,714 | + 76 | + .19 |
| 96 | 39,629 | − 9 | − .01 |

*After* the enactment, these figures were as follows:

| DISTRICT | POPULATION | POPULATION VARIANCE | PERCENTAGE VARIANCE |
|---|---|---|---|
| 90 | 40,700 | + 1062 | + 2.68 |
| 93 | 39,618 | − 20 | − 0.05 |
| 96 | 38,666 | − 972 | − 2.45 |

As will be seen, the populations of these districts were closer to the optimum prior to the enactment of HB 1407 than they were after this enactment, although the change with respect to district 93 was extremely small. At the hearing, the only explanation or reason tendered to support this reapportionment were those stated by Representative Spence, who was the incumbent in one of the districts and who requested the drafting of HB 1407. He testified that the purpose was to consolidate black and other lower income persons in his district, to consolidate white middle class persons in another district, and to give the other involved representative the precinct in which he had gone to high school.

In *Reynolds v. Sims,* 377 U.S. 533, at 568, 84 S.Ct. 1362, at 1385, 12 L.Ed.2d 506 (1964), the Supreme Court held:

"We hold that, as a basic constitutional standard, the Equal Protection Clause requires that the seats in both houses of a bicameral state legislature must be apportioned on a population basis. Simply stated, an individual's right to vote for state legislators is unconstitutionally impaired when its weight is in a substantial fashion diluted when compared with votes of citizens living in other parts of the State."

In that same opinion, the Court went on to say (at 577, 84 S.Ct. at 1390):

"By holding that as a federal constitutional requisite both houses of a state legislature must be apportioned on a population basis, we mean that the Equal Protection Clause requires that a State make an honest and good faith effort to construct districts, in both houses of its legislature, as nearly of equal population as is practicable. We realize that it is a practical impossibility to arrange legislative districts so that each one has an identical number of residents, or citizens, or voters. Mathematical exactness or

precision is hardly a workable constitutional requirement."

The Court, in *Reynolds,* held that some deviation from equal-sized districts is constitutionally permissible when justified by valid policy considerations but at the same time gave illustrations of considerations not deemed to be valid. In this connection, the Court said (at 579, 84 S.Ct. at 1391):

"History indicates, however, that many States have deviated, to a greater or lesser degree, from the equal-population principle in the apportionment of seats in at least one house of their legislatures. So long as the divergences from a strict population standard are based on legitimate considerations incident to the effectuation of a rational state policy, some deviations from the equal-population principle are constitutionally permissible with respect to the apportionment of seats in either or both of the two houses of a bicameral state legislature.

"But neither history alone, nor economic or other sorts of group interests, are permissible factors in attempting to justify disparities from population-based representation. Citizens, not history or economic interests, cast votes. Considerations of area alone provide an insufficient justification for deviations from the equal-population principle."

In *Mahan v. Howell,* 410 U.S. 315, 93 S.Ct. 979, 35 L.Ed.2d 320 (1972), the Supreme Court reiterated the propositions that the Equal Protection Clause requires that the States make an honest and good faith effort to construct districts as to both houses of their legislatures as nearly of equal population as practicable. It also, however, held that the strict requirements as to mathematical equality applicable to apportionment of congressional districts are not applicable to apportionment of the districts of State legislatures and that valid policy considerations may justify some deviation from equality as to such districts. In *Mahan* the Court held that deviations from equality in a plan for reapportionment of the Virginia legislature passed constitutional muster since they resulted from an at-

tempt to maintain existing political subdivision lines.

In *White v. Regester,* 412 U.S. 755, 93 S.Ct. 2332, 37 L.Ed.2d 314 (1973), the Court again relied upon the principles of *Reynolds* and *Mahan* with respect to reapportionment of State legislatures and further held that a population difference of 9.9% from the ideal district between two districts did not in and of itself make out a prima facie case of a violation of the Equal Protection Clause.

In *Chapman v. Meier,* 420 U.S. 1, 95 S.Ct. 751, 42 L.Ed.2d 766 (1974), the Court held that less deviation from mathematical equality is allowable under the Equal Protection Clause where the reapportionment is done by a federal district court than where it is done by a legislature. See also *Connor v. Finch, Governor,* —— U.S. ——, 97 S.Ct. 1828, 52 L.Ed.2d 465 (1977).

Finally, in *Cohen v. Maloney,* 410 F.Supp. 1147 (D.C.Del.1976), the court stated that a purpose of grouping people of like interests by neighborhoods is not a valid basis for deviating from mathematical equality.

■ This court concludes that the relatively small deviations resulting from this 1976 partial reapportionment at issue here would pass constitutional muster if they had been a result of the general reapportionment enacted by the Tennessee legislature in 1973 following the ruling by the three-judge court at Nashville in *Kopald v. Carr, supra.* Certainly such deviations would have been within the tolerances indicated by the foregoing decisions. However, the 1973 general reapportionment pursuant to which the 1974 elections were held demonstrates without doubt that it is practicable to more nearly approach mathematical equality in the districts involved here than was attained by this 1976 partial reapportionment. Moreover, following a court-ordered reapportionment based on a decennial census, the Equal Protection Clause requires a State to come forward with substantial justification for the ad hoc reapportionment of isolated legislative districts which reduces compliance with the one-man, one-vote dictates of *Reynolds.* Further, none of the reasons tendered to support the larger deviation from equality

caused by this 1976 partial reapportionment, under the cases cited and discussed herein, meet constitutional standards. This court recognizes that one of the House districts (district 93), after the 1976 partial reapportionment, presents only a very slight deviation from the optimum; however, the record indicates that such district could not be left undisturbed if the other two House districts (districts 90 and 96) are to be properly apportioned.

It is therefore the conclusion of the court that the plaintiffs in both cases are entitled to a declaration that the districts involved here are unconstitutionally malapportioned and are entitled to injunctive relief requiring the reconstitution of these districts as they were constituted pursuant to the 1973 general reapportionment.

■ Plaintiffs seek an award of attorney's fees pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 as amended. Under such provision, a court may award such fees in an action brought to enforce 42 U.S.C. § 1983 as here. Moreover, in *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), the Court held that Congress may, pursuant to its enforcement authority created by § 5 of the Fourteenth Amendment, authorize the award of damages or fees against a State despite the Eleventh Amendment; and the Civil Rights Attorney's Fees Awards Act of 1976 may be applied to cases pending, as here, at the time of its enactment. *Rainey v. Jackson State College,* 551 F.2d 672 (5th Cir. 1977); *Finney v. Hutto,* 548 F.2d 740 (8th Cir. 1977). Accordingly, this court is satisfied that it may award attorney's fees against the State of Tennessee in this action.

■ This court further concludes that such fees should be awarded. In this case, as a result of the 1973 general reapportionment by the legislature, the State had valid plans in effect, plans that had actually had prior approval by the three-judge court sitting at Nashville. Then, for no reasons based on a rational State policy, the legislature, in 1976, made this ad hoc partial reapportionment which caused these Senatorial

and House districts to deviate more from the optimum than they had prior to such reapportionment. In turn this made it necessary for these plaintiffs to employ counsel and obtain the aid of this court to correct this clearly illegal ad hoc reapportionment.

If the parties cannot stipulate as to the amount of a reasonable attorney fee in each case within ten days, the court will refer the matter to the magistrate for a hearing and determination.