ALLEN B. HARRADINE, Individually and as Director of the Orleans County Taxpayers Association, Inc., and All Others Similarly Situated, Respondent, v BOARD OF SUPERVISORS OF ORLEANS COUNTY, Appellant. STATE OF NEW YORK, Defendant.

Fourth Department, February 20, 1980

### APPEARANCES OF COUNSEL

*Thomas J. Young (Nixon, Hargrave, Devans & Doyle [David M. Lascell]* of counsel), for appellant.

*Vincent S. White (Robert J. Lane* of counsel), for respondent.

### OPINION OF THE COURT

SCHNEPP, J.

This is an appeal by the defendant, the Board of Supervisors of Orleans County (Board), from an award requiring it to pay

legal fees to plaintiff's attorneys in this voting rights case involving the "one person—one vote" rule.[1]

This action, which is no stranger to this court,[2] was commenced in 1971. In bringing this suit plaintiff sought a judgment declaring, *inter alia,* that the present distribution and apportionment of the members of the Board violate the equal protection clause of the Fourteenth Amendment of the United States Constitution and sections 1 and 11 of article I of the New York State Constitution. On October 4, 1971 plaintiff's motion for summary judgment was granted. Special Term, finding that the "apportionment of the Board of Supervisors of the County of Orleans as based upon section 150 of the County Law and section 29, subdivision 14, of the Town Law, violates the Equal Protection Clause" of both the Federal and State Constitutions, directed the Board to file a permanent constitutional plan of reapportionment and imposed an interim plan of weighted voting. On November 10, 1972 a reapportionment plan submitted by the Board was disapproved by Special Term, which directed that a revised plan be submitted by December 1, 1972. The record is silent as to any activity in the case until April, 1977 when a new plaintiff, Allen B. Harradine, and his attorney were substituted by Special Term which further ordered the Board (1) to comply with the order of November 10, 1972, (2) present a final reapportionment plan on July 29, 1977, and (3) make monthly interim progress reports. Thereafter, two local reapportionment laws adopted by the Board, one a redistricting scheme and the other a weighted voting scheme, were rejected by the voters of Orleans County at the general election in 1977. After the election, Special Term ordered the continuance of the interim weighted voting plan and instructed the Board to submit a constitutional reapportionment plan to the court not later than April 17, 1978. The Board proposed a weighted voting plan, identical to the plan submitted to the electorate in November, 1977, which was again rejected by the voters in a court-ordered special election in July, 1978. In November, 1978 Special Term enjoined the Board from holding a public hearing on a proposed reapportionment plan and imposed its own redistricting plan upon the county. On appeal we reversed this judgment, in *Harradine v Board of Supervisors of Orleans County*

---

1. See *Baker v Carr,* 369 US 186; *Avery v Midland County,* 390 US 474.

2. See *Harradine v Board of Supervisors of Orleans County,* 68 AD2d 298; *Harradine v Board of Supervisors of Orleans County,* 71 AD2d 1045.

(68 AD2d 298), as an unwarranted judicial intrusion into a legislative function. After further proceedings Special Term voided the 1971 court-imposed interim plan effective January 1, 1980 and directed the submission to the county's voters in the November, 1979 general election of a new interim form of government. We affirmed this order in *Harradine v Board of Supervisors of Orleans County* (71 AD2d 1045).

To retrogress, on December 8, 1978 Special Term granted plaintiff's application for an award of $21,325 in attorney's fees for services rendered after March, 1977, upon a finding that the action was properly commenced as a class action in March, 1971 under the then applicable statute, CPLR 1005. In making the award Special Term focused on the "unexplained four and one-half year delay on the part of the Board", and described "this inaction" as "oppressive" and "a willful and persistent defiance of the law", manifesting "bad faith" and necessitating plaintiff's recommencement of the proceeding.

On this appeal, the Board points out that to the contrary the court had commended the actions of the current Board and that no bad faith had been charged to it since 1977. It further notes that the record is silent as to the reason for the four and one-half year delay, and that no delay could have occurred without the inaction of all parties, including the court. The Board charges that Special Term erred in awarding fees to plaintiff's attorneys and submits that established law precludes the award of legal fees. Plaintiff counterargues that the long history of the Board's failure to act and its repeated recalcitrant behaviour is tantamount to bad faith and that Special Term did not abuse its discretion. Plaintiff claims that the award is permissible under either the statutes governing class actions or a bad faith doctrine and notes that counsel fees historically have been awarded in reapportionment cases.

In New York the general rule is that each litigant is required to absorb the cost of his own attorney's fees and a defendant may not be required to pay plaintiff's attorney's fee in the absence of a contractual or statutory liability with certain limited exceptions *(Mighty Midgets v Centennial Ins. Co.,* 47 NY2d 12; *Equitable Lbr. Corp. v IPA Land Dev. Corp.,* 38 NY2d 516; *Neri v Retail Mar. Corp.,* 30 NY2d 393; *City of Buffalo v Clement Co.,* 28 NY2d 241; *Young v Toia,* 66 AD2d 377; 1 Speiser, Attorneys' Fees, § 13.1).

It is clear that there was no agreement by the Board to pay plaintiff's attorney's fees and that when the judgment

was entered in 1971 no statutory authority existed which permitted the recovery of attorney's fees in class actions (see CPLR 1005 [L 1962, ch 308, as amd by L 1962, ch 318, § 4], repealed by L 1975, ch 207). Effective September 1, 1975 CPLR 1005 was repealed and replaced by CPLR article 9 entitled "Class Actions" (CPLR 901 *et seq.*). With the enactment of CPLR 909 attorney's fees became statutorily authorized in class action suits.[3] This statute, however, cannot be applied retroactively to proceedings that were pending when the statute became effective (see *Matter of Barton v Lavine,* 54 AD2d 350; cf. *Matter of Shook v Lavine,* 49 AD2d 238). Generally statutes are to be construed as prospective in operation only and a retroactive operation is not favored by the courts. "[A] statute will not be given a retroactive construction unless an intention to make it retroactive is to be deduced from its wording, and a law will not receive a retroactive construction unless its language, either expressly or by necessary implication, requires that it be so construed" (McKinney's Cons Laws of NY, Book 1, Statutes, § 51, p 89). CPLR article 9 contains no provision expressing an intent that it be applied retroactively to pending proceedings (see, e.g., *Simonson v International Bank,* 14 NY2d 281, 289). Thus, neither CPLR 1005 nor CPLR 909 can be looked to as statutory authority for an award of counsel fees.

■ ■ As noted above, New York courts have recognized certain exceptions to the general rule that attorney's fees are not recoverable absent a contractual or statutory liability, e.g., (1) when the litigation creates a benefit to others, and (2) when the opposing party's malicious acts cause a person to incur legal fees. For example, in *Fittipaldi v Legassie* (18 AD2d 331, 338), where union members brought a class action against their union, this court permitted the recovery of attorneys' fees, holding that counsel for the plaintiffs "materially benefited the general membership of the unions by pointing out and aiding to correct * * * abuses" of the union (see, also, *Murray v Kelly,* 14 AD2d 528, affd 11 NY2d 810). Here, only those voters whose voting power had been diluted by the malapportionment would benefit through a reapportionment; presumably the injury to those voters was substantially mini-

---

3. CPLR 909 provides that "[i]f a judgment in an action maintained as a class action is rendered in favor of the class, the court in its discretion may award attorneys' fees to the representatives of the class * * * and if justice requires, allow recovery of the amount awarded from the opponent of the class".

mized by the 1971 imposition of the interim weighted voting plan. Further, no fund had been created or preserved out of which the attorneys' fees could be paid (3 Carmody-Wait 2d, NY Prac, § 19:183). Nor is the Board charged with acting maliciously. In *United Pickle Co. v Omanoff* (63 AD2d 892) the court held that a person can recover attorney's fees if his opponent "intentionally sought to inflict economic injury on [him] by forcing [him] to engage legal counsel." To be recoverable, attorney's fees must be "proximately related to the malicious acts and the acts themselves must [be] entirely motivated by a disinterested malevolence" *(United Pickle Co. v Omanoff, supra,* p 893; see, also, *Fugazy Travel Bur. v Ernst & Ernst,* 31 AD2d 924; *Shindler v Lamb,* 25 Misc 2d 810, affd 10 AD2d 826, affd 9 NY2d 621).

None of these exceptions have application here and indeed Special Term did not attempt to justify the allowance on these theories. It is evident that Special Term in awarding fees to plaintiff found that the Board's alleged dilatory conduct constituted "bad faith" and the court utilized the "private attorney general" doctrine developed by Federal case law *(Fairley v Patterson,* 493 F2d 598; *Kahan v Rosenstiel,* 424 F2d 161, cert den *sub nom. Glen Alden Corp. v Kahan,* 398 US 950; *Sims v Amos,* 340 F Supp 691, affd 409 US 942; *Dyer v Love,* 307 F Supp 974) to bolster its conclusions. The cases relied on by the court, however, predated the rejection of the "private attorney general" doctrine by the Supreme Court of the United States in *Alyeska Pipeline Co. v Wilderness Soc.* (421 US 240).

Even if the court's theory applied, the record does not support a finding that the Board was guilty of bad faith. True, four and one-half years elapsed between the court's order in 1972 and the substitution of parties in 1977. However, it is not disputed that the Supreme Court Justice, who issued the judgment and order in 1971 and 1972, retired at some time before 1977. Also, the original plaintiff who instituted this class action was elected to the Board and both he and his attorney evidently lost interest in the case at some time subsequent to 1972. The only apparent fault of the Board was its failure to proceed with dispatch (cf. *Fairley v Patterson, supra; Sims v Amos, supra;* see, also, *Reynolds v Sims,* 377 US 533). Indeed, in August, 1978 Special Term commended this Board for its work by stating that " 'this Legislature has worked hard, diligently under my direction' " and noted that

the electorate failed to co-operate with the Board *(Harradine v Board of Supervisors of Orleans County,* 68 AD2d 298, 305, *supra).* As we recognized in the latter decision, "[i]t is apparent that failure to adopt a one-man one-vote rule is not due to a lack of diligence by the Board but to voter apathy" *(Harradine v Board of Supervisors of Orleans County, supra,* p 305).

For the first time plaintiff contends on this appeal that this lawsuit is essentially a civil rights action brought pursuant to section 1983 of title 42 of the United States Code and that he is entitled to attorney's fees under section 1988. Congress enacted the Civil Rights Attorney's Fees Awards Act of 1976 (US Code, tit 42, § 1988) in response to the United States Supreme Court decision in *Alyeska (supra).*[4] The act, which became effective on October 19, 1976, amended section 1988 of the United States Code to add the following language: "In any action or proceeding to enforce a provision of section * * * 1983 * * * the court, in its discretion, may allow the prevailing party * * * a reasonable attorney's fee as part of the costs." Under section 1988 attorney's fees are not awarded to punish for bad faith but to encourage enforcement of the Civil Rights Act by compensating persons who bring meritorious actions because they are thought to be advancing the public interest *(Hutto v Finney,* 437 US 678; *Pickett v Milam,* 579 F2d 1118). The *prevailing* party is entitled only to *reasonable* attorney's fees which are compensatory not punitive in nature. The allowance is subject to the court's discretion "which we must assume will be exercised to achieve a just result" *(Bond v Stanton,* 555 F2d 172, 174, cert den 438 US 916).[5] "A party is not entitled needlessly to accumulate exorbitant legal fees with the expectation that the losing party will be called upon to pick up the entire tab" *(Planned Parenthood of Minn. v Citizens for Community Action,* 558 F2d 861, 871; see, also, *Lund v Affleck,* 587 F2d 75; *Anderson v Redman,* 474 F Supp 511).

---

4. Congress apparently felt that *Alyeska* left an anomalous gap in the Federal civil rights laws. Courts were authorized to award attorneys' fees under several other civil rights statutes; however, under section 1983, which was meant to protect fundamental civil rights, attorneys' fees were suddenly unavailable (US Code, Cong & Admin News, 1976, vol 5, pp 5908, 5911). With the passage of the Attorney's Fees Awards Act of 1976, Congress sought to achieve consistency in the Federal civil rights law. (Note, The Civil Rights Attorney's Fees Awards Act of 1976, 52 St John's L Rev 562.)

5. The relevant criteria in arriving at a reasonable fee award are amply defined by the courts (see *Christiansburg Garment Co. v EEOC,* 434 US 412; *Johnson v Georgia Highway Express,* 488 F2d 714; see, also, Code of Professional Responsibility, DR 2-106).

Section 1983 of title 42 provides as follows: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Plaintiff, however, does not specifically allege a violation of section 1983.

Thus, we are presented with the following question: Should plaintiff be permitted to recover attorney's fees under the Civil Rights Attorney's Fees Awards Act of 1976 if he is a prevailing party in a State court suit which does not allege a violation of section 1983, but seeks to enforce Federal civil rights? Plaintiff alleges here that his rights under the equal protection clause of the Fourteenth Amendment of the United States Constitution and sections 1 and 11 of article I of the New York State Constitution were violated and that he was deprived of "the equal protection of the law by the present and existing apportionment of members of the [Board] and the districting of the County, whereby one member of such Board is elected from each town without regard to the population of such towns".

Section 1 of article I (Bill of Rights) of the New York State Constitution provides in part: "No member of this state shall be disenfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by law of the land, or the judgment of his peers". The provisions of section 1 and section 1983 are noticeably similar.[6] They both contain the same operative language and embody the same spirit.

Moreover, several actions for reapportionment have been brought under section 1983 in the Federal courts to redress the alleged deprivation of Federal constitutional rights (see, e.g., *Baker v Carr,* 369 US 186; *Ellis v Mayor & City Council of Baltimore,* 352 F2d 123; *Burton v Whittier Vocational Regional School Dist.,* 449 F Supp 37, affd 587 F2d 66; *Brown*

---

**6.** Section 1983 provides: "Every person who * * * subjects * * * any citizen of the United States * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured". Section 1 of article I provides: "No member of this state shall be disenfranchised, or deprived of any of the rights or privileges secured to any citizen thereof".

*v Moore,* 428 F Supp 1123, affd 575 F2d 298; *White v Crowell,* 434 F Supp 1119).

Arguably, plaintiff's cause of action is based on a "deprivation of [his] rights * * * secured by the Constitution" (US Code, tit 42, § 1983) and falls within the ambit of section 1983. "A citizen's right to a vote free of arbitrary impairment by state action has been judicially recognized as a right secured by the Constitution" *(Baker v Carr, supra,* p 208).

We recently recognized the applicability of section 1988 in actions brought to enforce section 1983 in New York State courts *(Young v Toia,* 66 AD2d 377, *supra;* see, also, Shapiro, The Enforceability and Proper Implementation of § 1983 and the Attorney's Fees Awards Act in State Courts, 20 Ariz L Rev 743).[7] "[T]he purpose of the 1976 amendment of section 1988 was to encourage the private citizen to take action, as a 'private attorney general', to enforce civil rights laws [citation omitted] and the law should be construed to effectuate its purpose" *(Young v Toia, supra,* p 379). The Civil Rights Attorney's Fees Award Act must be broadly applied to achieve its remedial purpose *(Mid-Hudson Legal Servs. v G & U, Inc.,* 578 F2d 34).

In view of the number of apportionment cases brought in Federal court pursuant to section 1983, the similarity in language of section 1983 and section 1 of article I of the New York State Constitution, the policy behind section 1988 which is to encourage the private citizen to take action as a "private attorney general", and the fact this action is premised upon a constitutional claim, we conclude that attorney's fees may be recovered in this context pursuant to section 1988 in a State court. Plaintiff's cause of action is embraced within the spirit of section 1983 and Special Term implicitly found a violation of this section (see *La Raza Unida of So. Alameda County v Volpe,* 440 F Supp 904).

We point out that the 1976 amendment to section 1988 applies retroactively to cases pending at the time of its enactment (Oct. 19, 1976) *(Gore v Turner,* 563 F2d 159; *Wharton v Knefel,* 562 F2d 550; *Bond v Stanton,* 555 F2d 172, cert den 438 US 916, *supra; King v Greenblatt,* 560 F2d 1024, cert den 438 US 916) and extends to cases alleging statutory violations

---

7. Both State and Federal courts have concurrent jurisdiction over civil rights actions and cases alleging violations of section 1983 (see, e.g., *Di Antonio v Pennsylvania State Univ.,* 455 F Supp 510; *Young v Board of Educ.,* 416 F Supp 1139; *Young v Toia, supra; Cooper v Morin,* 50 AD2d 32; *Clark v Bond Stores,* 41 AD2d 620).

under section 1983 as well as constitutional violations *(Hutto v Finney,* 437 US 678, *supra; Pickett v Milam,* 579 F2d 1118, *supra; King v Greenblatt, supra).*

Although plaintiff's claim may have merit, the question as to whether section 1988 applied to the instant case was neither argued before, presented to, nor considered by Special Term which erred in making the award of attorney's fees on the grounds noted in its decision. The court was not called on to determine whether plaintiff was in fact a "prevailing party" in a section 1983 case *(Buckton v National Collegiate Athletic Assn.,* 436 F Supp 1258; *Parker v Matthews,* 411 F Supp 1059, affd *sub nom. Parker v Califano,* 561 F2d 320), a prerequisite to awarding attorney's fees pursuant to section 1988.

Accordingly, we reverse and vacate the award of attorneys' fees without prejudice to plaintiff's application for such an allowance under section 1988, if plaintiff is so advised, in which case a determination may be made on the appropriateness of the application to grant counsel fees and, if so, for the application of the proper discretionary rule.

CARDAMONE, J. P., HANCOCK, JR., CALLAHAN and MOULE, JJ., concur.

Order unanimously reversed, without costs, and motion denied, in accordance with opinion by Schnepp, J.