HEALTH CARE PLAN, INC., et al., Respondents-Appellants, v VICTOR BAHOU, Individually and as President and Commissioner of the Civil Service Commission, Appellant-Respondent.

Fourth Department, February 28, 1983

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Patrick O. McCormack* of counsel), for appellant-respondent.

*James L. Magavern* for respondents-appellants.

OPINION OF THE COURT

DILLON, P. J.

 The principal issue to be decided on this appeal is whether respondent, in his capacity as President of the Civil Service Commission, improperly calculated for the year 1980 the State's employer contribution to the cost of health insurance coverage for employees enrolled in the optional benefit plan administered by petitioner Health Care Plan, Inc. (HCP). Special Term found that he did, and we agree.

For many years the State has provided a basic, State-wide health insurance plan (State-wide plan) for its employees (Civil Service Law, art XI). To effectuate the plan, respondent is authorized to purchase contracts from qualified insurance carriers (Civil Service Law, § 162). More recently, on the premise that health maintenance organizations provide an efficient means of delivering health care services, both the Federal and State Governments have encouraged their growth (US Code, tit 42, § 300e; Public Health Law, art 44).

The Federal Health Maintenance Organizations Act (US Code, tit 42, § 300e *et seq.*) requires that States, as a condition of receiving certain Federal grants, offer their employees the option of membership in a health maintenance organization as an alternative to traditional health benefit plans and directs the Secretary of Health and Human Services (Secretary) to prescribe regulations to implement the statutory purpose (US Code, tit 42, § 300e-9, subd [a], par [1]). The regulations require that the terms of such offer be "no less favorable" with respect to the State's monetary contribution than that made to a non-health maintenance organization plan (42 CFR 110.808[a]; 110.801).

Subdivision 1 of section 167 of the Civil Service Law requires the State to pay the full cost of premium or subscription charges for coverage of employees enrolled in the State-wide plan and 75% of such cost for coverage of dependents of those employees. The statute further provides, in relevant part: "The state shall contribute toward the premium or subscription charges for the coverage of each state employee * * * who is enrolled in an optional benefit plan and for the dependents of such state employee * * * the same dollar amount which would be paid by the state for the premium or subscription charges for the coverage of such state employee * * * and his dependents if he were enrolled in the basic, statewide health insurance plan". Although regulations to implement the State statutory scheme have been proposed, they have not been promulgated.

HCP is a health maintenance organization established under the Not-For-Profit Corporation Law. It is authorized to provide an optional benefit health insurance plan to which State employees began to subscribe in 1978. It is not disputed that health maintenance organizations, including HCP, provide a broader range of benefits than the State-wide plan, and thus the total cost of coverage under the HCP plan ordinarily will be greater. Each employee member of HCP pays the difference between the total cost and the amount contributed by the State.

Before respondent can compute in a given year the State's contribution on behalf of members of HCP, he must

first determine the amount to be contributed under the State-wide plan. The premium or subscription charges of the latter are based upon claim experience, and when claims for a prior year were less than anticipated when the premium was established for that year, the State-wide plan insurance carriers refund the overpayment of premiums to the State health insurance fund in which such sums are retained "as a special reserve for adverse fluctuation in future charges" (Civil Service Law, § 167, subd 6). In succeeding years, respondent is authorized to take such refunds into account when establishing the State's contribution under the State-wide plan (Insurance Law, § 221, subd 9).

The claim experience in the State-wide plan in 1977 demonstrated that the State's contribution for that year was more than required to meet the costs of the plan. In effect, the State had overpaid premiums on behalf of State-wide plan subscribers, thus generating refunds from the insurance carriers.

In 1980 respondent determined that the State's contribution to the State-wide plan would include those refunds, with the balance to be met from moneys appropriated to the State health insurance fund. In determining the cost per member, respondent did not consider the refunds, but divided only the amount appropriated by the number of State-wide plan members. The quotient was then used as the measure of the State's contribution on behalf of members of HCP. The contribution to HCP was substantially less, of course, than would have been made had the refunds been included in the formula. Thus, it is said, members of HCP were required to pay a higher share of premium charges for coverage in 1980, and other State employees were discouraged from enrolling or remaining in HCP.

In this CPLR article 78 proceeding, the petition seeks:

1. a determination that respondent unlawfully computed the State's contribution to HCP and that employees enrolled in HCP are entitled to further contribution from the State;

2. a direction that respondent recompute the contribution to HCP in accordance with Federal and State law; and

3. a direction that over a reasonable time the State's contribution be increased to make up the deficiency.

Special Term adjudged, on the basis that the refunds were generated in a year "prior to the inception of the HCP" that "petitioners" were entitled to recover an amount equal to the amount of the refunds "computed in the 1980 rate for State contributions to the Statewide plan carriers." The judgment further directs that such sums be paid to HCP and that HCP "shall be allowed to pass its saving * * * on to its participating members." Special Term denied petitioners' request that respondent be ordered to compute the State's contribution to HCP in accordance with Federal regulations promulgated by the Secretary, and also denied petitioners' application to compel respondent to pay counsel fees. Respondent appeals and petitioners cross-appeal.

■ We first dispose of respondent's argument that petitioners have no standing to bring this proceeding. Petitioner HCP and the subscriber petitioners have demonstrated that calculation of the State's contribution to HCP on behalf of its members is within the zone of interest protected by State and Federal law, and that miscalculation of such contribution may leave them aggrieved (see *Matter of Dairylea Coop. v Walkley,* 38 NY2d 6).

■ Turning to the merits, respondent asserts that his method of calculating the State's contribution to HCP is in conformity with the mandate of subdivision 1 of section 167 of the Civil Service Law. We disagree. There can be no doubt as to the statute's import; it is to ensure that the State's contribution on behalf of members of an optional benefit plan is to be neither more nor less than that contributed under the State-wide plan. The claim experience in the State-wide plan in 1977 demonstrated that the State's contribution for that year was more than required to meet the costs of the plan. Since the State was required in that year to contribute to optional benefit plans the same dollar amount paid into the State-wide plan, it follows that the optional benefit plans were also overpaid. The State statutory scheme makes no provision for recomputation or recovery of such overpayments from providers of optional benefit plans.

■ Consistent with the mandate that the State not discriminate against health maintenance organizations and that it contribute only the "same dollar amount" to the optional benefit plans of such organizations, it is essential, in order to recover overpayments to optional benefit plans, that any deduction from the State's contribution to the State-wide plan which is based upon prior claim experience refunds must be equally applied in computing the contribution to the optional benefit plans. Thus, as to those health maintenance organizations which received overpayments of premiums in 1977, the State's 1980 contribution was properly computed.

■ It was wholly improper, however, for respondent to employ that formula in calculating the State's 1980 contribution to HCP which was not a participant in a State-approved plan in 1977 and thus could not have received an overpayment of premium in that year. The necessary consequence of respondent's action, depending upon whether and to what extent refunds are generated from claim experience in the State-wide plan for the year 1980, is that HCP will have been, or will in the future be, underpaid the contribution required by statute and regulation. In order to comply with applicable law, it was essential that the State contribute to HCP an amount equivalent to the full estimated cost of premium and subscription charges for employee members under the State-wide plan.

In so holding, we recognize that the regulations promulgated under the Federal Health Maintenance Organizations Act include a specific provision for the method to be employed in calculating the contribution to a health maintenance organization when retrospective claim experience is a factor (42 CFR 110.808[g][2]). The regulation would require respondent to estimate the State's contribution to all optional benefit plans on consideration of several factors, including the State's "cost experience [for the State-wide plan] with respect to the most recent benefit period for which the experience is available at the time when the employing entity's prospective contribution * * * to the [optional benefit plan] is to be determined". Other factors which must be taken into account relate to an allowance

for inflation, relevant cost differences, changes in the covered population, changes in benefits, etc.

On their cross appeal, petitioners insist that respondent is required to comply with the regulation. Respondent concedes that his calculation was not made in conformity with the regulation, but argues that the Secretary exceeded his power in promulgating it. He acknowledges that the Federal statute (US Code, tit 42, § 300e) requires the State to provide for such optional employee health benefit plans, but contends that further regulation of the State by the Secretary is precluded by subdivision (f) of section 300e-9 of title 42 of the United States Code, which specifically excludes States from the definition of employer. We disagree. Legislative history demonstrates conclusively that States were excluded from the definition of employer only for the purpose of escape from the civil penalty provisions of the act (see H R Rep 94-518, US Code Cong & Admin News, 1976, vol 4, p 4340). For all other purposes the State is subject to the act and to the regulations lawfully promulgated thereunder (US Code, tit 42, § 300e-9, subd [a], par [1]).

Nonetheless, it would be inappropriate here to require respondent to apply the Federal formula. True, the Secretary's regulations are intended to ensure equal treatment of health maintenance organizations in each of the several States. They should not be interpreted, however, to require strict compliance in States where the method of computing the State's contribution to such an organization already guarantees that equality. Indeed, application of the Federal regulation governing "retrospective calculation" would necessarily produce inequality, unless respondent applied the same formula in meeting the cost of the State-wide plan. The Federal act does not empower the Secretary to compel that result. We conclude, therefore, that respondent's compliance with this State's statutory scheme, as here required, will fully satisfy not only the demands of the Federal act but the spirit and intent of the regulations as well.

Accordingly, that part of the judgment which directs respondent to calculate the State's contribution toward the premium charges for coverage of employees enrolled in the

HCP optional benefit plan for the year 1980 without reducing estimated premium charges under the State-wide plan by the amount of refunds generated from prior claim experience should be affirmed.

■ In fashioning a further remedy, however, it is our view that Special Term erred in directing payment to HCP of the additional amount which should have been contributed to it in 1980 and in ordering that HCP shall be "allowed" to distribute such sum among its participating members. HCP is aggrieved only to the extent that respondent's acts may have discouraged employees from enrolling or remaining in its plan. It has otherwise received either from its members or from the State the full premiums to which it was entitled for the year 1980. No direction of further payment to HCP should be made (see 13 NY Jur, Damages, § 10, p 432). The petition may be read, however, to assert a claim by the two subscriber petitioners for recovery of the amount of their overpayments of premium. Upon recomputation by respondent as here ordered, the subscriber petitioners should each be refunded such overpayment. This is not a class action and it would be inappropriate to direct payment to other subscribers who are not parties.

Finally, petitioners' request for an order directing respondent to pay petitioners' counsel fees should be denied. There is no statutory or contractual basis for such an award (see *Harradine v Board of Supervisors of Orleans County,* 73 AD2d 118).

The judgment should be modified in accordance with this opinion and, as modified, it should be affirmed.

CALLAHAN, DENMAN, BOOMER and SCHNEPP, JJ., concur.

Judgment unanimously modified, and as modified affirmed, with costs to petitioners, in accordance with opinion by DILLON, P. J.