OPINION OF THE COURT
Daniel F. Luciano, J.
The current application has been made for appointment of a guardian pursuant to article 81 of the Mental Hygiene Law for the management of property of Lewis Davidson Whitehead located in New York. The petitioners are the co-committees who have been appointed for Lewis Davidson Whitehead pursuant to an order of the Queen’s Bench, Province of Manitoba, Canada, dated April 7, 1994.
The parties proposed a stipulation to resolve this matter. On the record on October 16, 1995 the court "suggested” it be modified. The parties have now submitted the revised stipulation which satisfies the concerns expressed by the court.
In the course of proceedings herein on October 16, 1995 in which the court reviewed and suggested changes to the stipulation, the court also noted that "fee requests have been submitted by one or more of the Counsel in this matter to the Co-Committees in Canada, who have duly reported these requests to the Queens Bench for ratification or approval of payment thereof’. (Transcript, at 7-8.) The court was advised that fees had actually been paid. Further, in their affidavit submitted pursuant to the court’s directive on October 16, 1995, the petitioners have advised that because of an adjournment of proceedings in the Canadian court, fees which heretofore have been paid to either former counsel, Shearman & Sterling, Esqs., or current counsel, Russo & Atlas, Esqs., have not yet been considered by the court in Canada.
At the October 16, 1995 proceedings, the court indicated that until it was shown otherwise, its view was "that this Court had exclusive jurisdiction to award counsel fees for a proceeding before it pursuant to Article 81 of the Mental Hygiene Law”. (Transcript, at 8.)
The court then continued: "Now, the Court does not take the position that it is without power, perhaps on the theory of comity, to ratify the actions of the Queens Bench in this Court in its proceeding, but I want to be satisfied that this Court, on the basis of perhaps comity should consider ratification of the fees, but it is directed that no additional fees by the Co- *556 Committees be paid to any attorney or any party without prior approval of this Court”. (Transcript, at 8-9.)
Submission of a memorandum of law on the issue of comity and an affidavit / affirmation of legal services was directed.
The court notes that although it advised current counsel for the petitioners, Russo & Atlas, Esqs., by David A. Smith, Esq., that the directives herein also applied to counsel which had preceded Russo & Atlas, Esqs., in the representation of the petitioners herein (transcript, at 11), a memorandum of law has been received only from Russo & Atlas, Esqs., by David A. Smith, Esq.
The question of fees payable to counsel for the petitioners out of the funds of Lewis Davidson Whitehead in the instant proceeding is now before the court.
As noted, David A. Smith, Esq. of Russo & Atlas, Esqs. has provided a memorandum of law in which it is argued that "as a matter of international comity, this Court should defer to the Queen’s Bench concerning reviews of the accounts of the Co-Committees of Lewis Davidson Whitehead as to all expenditures made from the Manitoba funds by the Co-Committees, including their expenditures for New York attorneys’ fees”.
To be distinguished from the doctrine of comity, of course, is the compulsory full faith and credit to be afforded most judgments of other States of the United States. (E.g., 9 Carmody Wait 2d, NY Prac § 63:519.) As observed many years ago with respect to the distinction between valid decrees of sister States of the Union and those of foreign countries: "The former must be recognized without question;[*] the latter only in the discretion of the court guided and controlled, among other things, by *557 the circumstances of the particular case.” (Boissevain v Boissevain, 224 App Div 576, 579.)
It is noteworthy, moreover, that the fee charged by counsel for the petitioners has not yet been reviewed and approved by the Canadian court although the duty to retain counsel was directed by that court. Thus, there is something less than a final decree of the Queen’s Bench to be afforded comity on the particular issue of the proper fee to be paid to counsel for the petitioners from the funds of Lewis Davidson Whitehead. Yet, even if the matter is considered ripe for a determination as to *558 whether the doctrine of comity is applicable, this court’s conclusion is, nevertheless, that the only "reasonable compensation” properly payable to counsel for the petitioners from the funds of Lewis Davidson Whitehead is the "reasonable compensation” found by this court in accordance with section 81.16 (f) of the Mental Hygiene Law.
One of the three cases cited in the memorandum of law submitted by David A. Smith, Esq. of Russo & Atlas, Esqs., is Clarkson Co. v Shaheen (544 F2d 624, 629 [2d Cir]) from which the following statement is quoted by him: "New York courts recognize the statutory title of an alien trustee in bankruptcy, as long as the foreign court had jurisdiction over the bankrupt and the foreign proceeding has not resulted in injustice to New York citizens, prejudice to creditors’ New York statutory remedies, or violation of the laws or public policy of the state” (emphasis supplied by this court).
While the court agrees that the standard for deferring to the determination of the court of a foreign country in accordance with the doctrine of comity has been accurately stated, it disagrees with the application or interpretation of such standard by counsel, inasmuch as having the fee of counsel set by a means other than this court’s determination pursuant to Mental Hygiene Law § 81.16 (f) is contrary to the public policy of the State.
The guardianship system established by article 81 of the Mental Hygiene Law was enacted by the Legislature "to promote the public welfare”. (Mental Hygiene Law § 81.01.) The provisions of article 81, therefore, constitute the Legislature’s detailed and thoughtful codification of this State’s public policy with respect to protecting the rights and interests of incapacitated persons. Compounding this concern for protection of incapacitated persons generally is the fact that "[rjetainer contracts between attorney and client, as a matter of public policy, are of special interest and concern to the courts”. (Matter of Schanzer, 7 AD2d 275, 278, affd 8 NY2d 972.) New York’s policy is that with respect to agreements between attorney and client "the burden is on the attorney to establish absence of fraud on the part of the attorney and that all the terms were fully understood by the client”. (Abrams, Kisseloff & Kissin v 160 Bleecker St. Assocs., 67 AD2d 629, 630.) Thus, when the matter under review involves an attorney’s fee to be paid out of the funds of an incapacitated person the court is at a heightened state of sensitivity to assure that the parties have a clear understanding as to the applicable law with respect to awards of attorneys’ fees.
*559 In the present case, it is not established that the petitioners or petitioners’ counsel were aware of the statutory provisions which govern the setting of "reasonable compensation” to counsel for the petitioner in Mental Hygiene Law article 81 proceedings. Furthermore, even assuming full understanding by the petitioners of all the statutory provisions and the ramifications of the retainer agreement with counsel, since the fee is to be paid out of the funds of the incapacitated person, Lewis Davidson Whitehead, it should be his full understanding and waiver which would be necessary to authorize a departure from New York’s public policy considerations. Inasmuch as the attorneys seeking fees have asserted that Lewis Davidson Whitehead is an incapacitated person who should be adjudged to be in need of a guardian to manage his property, any argument by those attorneys that Lewis Davidson Whitehead is in a position to give effect to such a waiver would be spurious.
Having concluded that it would not be appropriate for this court merely to defer to a determination by a foreign court as to a counsel fee payable by the incapacitated person relative to a proceeding before this court, it is appropriate to examine, in detail, the reasons why such fees should be fixed in the forum in which the proceeding has been brought and heard.
At the outset, it may be noted that article 81 of the Mental Hygiene Law continues the concept of what under former article 77 of the Mental Hygiene Law was termed an ancillary conservatorship. Former section 77.15 of the Mental Hygiene Law authorized the court, where a conservator or the equivalent had been appointed in a foreign State, territory or country in which the conservatee resided, to designate such foreign appointee as the conservator of all or a part of the property of the conservatee within New York.
The current section 81.18 of the Mental Hygiene Law continues this concept allowing the guardian, or the equivalent, appointed in a foreign State, territory or country where the alleged incapacitated person resides, to be appointed a guardian with respect to property management in New York.
Under the prior law, and clearly the continuing rule under article 81 of the Mental Hygiene Law, the finding of incompetency, diminished mental abilities, lack of capacity or other determination in a foreign jurisdiction resulting in the appointment of a committee, conservator, guardian or fiduciary of any other name, is not accorded full faith and credit by the courts of New York. (E.g., Matter of Sulzberger, 159 Misc 2d 236; 18 Carmody-Wait 2d, NY Prac § 109:37.)
*560 Although the court may accord such foreign finding the weight of prima facie proof (e.g., Matter of Sulzberger, supra; Matter of Witten, 78 Misc 2d 162) it is not binding on the courts of New York. Accordingly, a proceeding which some may characterize as one for "ancillary” relief, such as the current proceeding, is nevertheless a full-fledged, independent proceeding to which all the procedural and substantive rules of Mental Hygiene Law article 81 apply.
Among the provisions of Mental Hygiene Law article 81 is section 81.16 (f) which provides: "When a petition is granted, or where the court otherwise deems it appropriate, the court may award reasonable compensation for the attorney for the petitioner.”
Thus, a standard element of a proceeding under article 81 of the Mental Hygiene Law is a determination by the court as to the fee payable to counsel for the petitioner from the incapacitated person’s funds.
The fact that the person alleged to be incapacitated in a proceeding in New York may already have had a committee appointed in a foreign jurisdiction should not, and does not, diminish such person’s procedural or substantive rights in a Mental Hygiene Law article 81 proceeding. The alleged incapacitated person enjoys all the statutory protections available to a person for whom no fiduciary has been previously appointed. The co-committee, appearing as a legal entity appointed by a foreign court, does not come into this court with any greater right to avoid the application of the procedural or substantive law in the Mental Hygiene Law article 81 proceeding than does any natural person so appearing. The subject matter and the issues to be determined by the New York court are unaltered. The implicit suggestion of counsel for the petitioners is to the contrary inasmuch as he asserts that in this case section 81.16 (f) of the Mental Hygiene Law should not apply.
Certainly, in the more common circumstance in which no fiduciary is in place to represent the alleged incapacitated person’s interests, the necessity of having the court in which the Mental Hygiene Law article 81 proceeding was heard fix a reasonable fee is plainly evident. The fee should be paid by the person for whose benefit the proceeding was commenced so that potential petitioners will not be discouraged from bringing the proceeding, but the fee should be supervised by the court to insure that no more than a reasonable fee is paid out of the incapacitated person’s assets. While it is argued that *561 these concerns are not present here since the payment of the fees will be subject to the review of the Canadian court, it is for the reasons indicated below, nevertheless necessary and appropriate that this court determine the "reasonable compensation” payable to the petitioners’ attorneys in this proceeding.
New York courts have set forth the guidelines for determining appropriate counsel fees. It is contemplated that " '[i]n general the court, in determining the justice and reasonableness of an attorney’s claim for services, should consider the time spent, the difficulties involved in the matters in which the services were rendered, the nature of the services, the amount involved, the professional standing of the counsel, and the results obtained.’ ” (Matter of Karp, 145 AD2d 208, 215, quoting Matter of Potts, 213 App Div 59, 62, affd, 241 NY 593.)
Further, in Matter of Karp (supra) the Appellate Division, First Department, quoted the following language: " 'Long tradition and just about a universal one in American practice is for the fixation of lawyers’ fees to be determined on the following factors: time and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented; the lawyer’s experience, ability and reputation; the amount involved and benefit resulting to the client from the services; the customary fee charged by the Bar for similar services; the contingency or certainty of compensation; the results obtained; and the responsibility involved.’ ” (145 AD2d, at 215, quoting Matter of Freeman, 34 NY2d 1, 9.)
Patently, no court in advance of the proceeding is able to take into account all these relevant factors in setting an appropriate fee since many of them can be considered only retrospectively after a hearing and determination of the Mental Hygiene Law article 81 proceeding. When a court, not only outside the State of New York, but outside the United States, is asked to pass upon the reasonableness of the fee for the petitioners’ attorney prior to the proceeding, the difficulty is compounded that much more by the foreign court’s lack of familiarity with the applicable standards in setting fees and the customary range of reasonable fees awarded in Mental Hygiene Law article 81 proceedings, particularly in this locale. To thrust upon a foreign court the obligation to familiarize itself with the details and subtleties of the laws and practices of New York is to impose an unreasonable burden on that court; to have the foreign court fix the fees payable in this proceeding without application of all the details and subtleties of the laws and practices of New York is violative of the alleged incapacitated person’s rights in this proceeding.
*562 The present situation is clearly distinguishable from a case in which a petitioner agrees to compensate counsel, out of his or her own funds, a given sum, or at an agreed upon rate, in excess of a fee awarded by the court pursuant to section 81.16 (f) of the Mental Hygiene Law. In that circumstance, a person with full capacity to contract has knowingly entered into a contractual arrangement which authorizes counsel to receive, and the contracting party to be liable for, a sum exceeding that awarded by the court to be paid out of the incapacitated individual’s assets. (Cf., Matter of Roy [Lepkowski], 164 Misc 2d 146.)
Thus, the petitioners are fully capable of entering into an agreement to personally pay counsel a fee out of their own funds exceeding what this court may find to be "reasonable compensation for the attorney for the petitioner”. (Mental Hygiene Law § 81.16 [f].) What they, as co-committees, have agreed to, however (albeit subject to the review by the Canadian court), is to pay such excess above "reasonable compensation” not out of their own funds, but from the assets of the incapacitated person, for whose benefit the proceeding has been brought, and whose interest this court is charged with protecting.
The clear mandate of section 81.16 (f) of the Mental Hygiene Law is to assure that the attorney’s fee awarded to the petitioner for which the incapacitated person is to be responsible does not exceed a "reasonable” fee. The determination of the reasonableness of a fee requires consideration of all relevant circumstances. Nothing arising out of the prior involvement of the Canadian court compels employment of a procedure, deviating from ordinary practices, which relieves this court of the obligation to pass upon the fee payable to counsel for the petitioner, inasmuch as the setting of such fee requires consideration of factors which only this court is in a position to assess, such as the time spent, the difficulties considered in the matter and the nature of the services. No exigency has been identified justifying departure from general principles and the imposition of an unnecessary burden on the Canadian court of involving itself in a New York State Mental Hygiene Law article 81 proceeding. In addition, there are factors as to which this court, although not necessarily in a unique position to consider, sits in a far more advantageous position to weigh and evaluate than does a foreign court, such as the professional standing of counsel and the customary fee awarded in similar cases.
*563 It should be noted, moreover, that in Mental Hygiene Law article 81 proceedings the fee of the petitioners’ attorney is not the only fee which must be set by the court. Section 81.09 (f) of the Mental Hygiene Law requires the court to fix a "reasonable allowance” for the court evaluator payable out of the estate of the alleged incapacitated person. Often additional fees must be awarded to expert witnesses, other fiduciaries involved in the proceedings such as guardians ad litem, and even counsel to parties other than the petitioner if such other parties also prevail in the proceeding to some degree. Clearly, a foreign court should not set the compensation for these individuals, and an exception should not be established for the petitioners’ attorney. Moreover, to have a foreign court, unfamiliar with New York practice and the conduct of the particular New York proceeding fix the fee for one of these parties could well result in awards of fees bearing no sense of fair proportion to one another and not reflective of the relative benefit inuring to the alleged incapacitated person from the services rendered by each of the parties receiving a court-awarded fee. Additionally, it simply defies logic for this court to defer to the foreign court with respect to the fixing of fees of the petitioners’ counsel while retaining the authority to fix fees for all others.
As noted above, the instant proceeding is independent of and not governed by the Canadian proceeding which resulted in the appointment of co-committees for Lewis Davidson Whitehead. Thus, while the directives of the Canadian court do not bind this court, relative to the proceedings to determine if appointment of a property management guardian is required in New York, it is equally true that this court cannot bind the Canadian court as to the amount of Canadian assets it may authorize the co-committees of Lewis Davidson Whitehead to expend for any purpose.
What this court may do, however, is: set forth its determination of reasonable compensation payable to counsel for the petitioners pursuant to section 81.16 (f) of the Mental Hygiene Law; direct that if the sum previously paid to counsel exceeds that sum that no portion of such fee be paid from New York assets; and direct the petitioners, who are subject to the jurisdiction of this court, to report to the Canadian court the findings herein regarding the reasonable compensation to counsel for the petitioner, in order to allow the Canadian court to determine whether in its discretion the interests of Lewis Davidson Whitehead require an adjustment of the fee which has *564 been paid by the co-committees as compensation to their attorney. The co-committees will also be directed to report back to this court as to their compliance with the directives of this court, and the determination or actions in response thereto, if any, of the Queen’s Bench, Province of Manitoba, Canada.
Presently, however, the court is unable to make a determination as to the "reasonable compensation” payable to counsel for the petitioners pursuant to section 81.16 (f) of the Mental Hygiene Law inasmuch as the papers before the court do not include a detailed affidavit of services rendered herein from either current counsel, Russo & Atlas, Esqs., or the original attorneys, Shearman & Sterling, Esqs., in the representation of the petitioners herein.
Upon consideration of all the foregoing, it is ordered that within 15 days after the date of this order Russo & Atlas, Esqs. submit a detailed affidavit reflecting the services provided relative to the current proceeding which describes with particularity the services rendered and the time expended in the rendering of such services and which identifies the attorneys who provided such services, including a brief biographical description of each such attorney’s background and experience, and further that Russo & Atlas, Esqs. submit a true and accurate copy of any written retainer agreement between Russo & Atlas, Esqs. and the co-committees regarding services rendered in this proceeding or, if there is no written agreement, an affidavit setting forth the sum and substance of any oral retainer agreement between Russo & Atlas, Esqs. and the co-committees regarding services rendered in this proceeding, and it is further ordered that within 15 days after the date of this order, Shearman & Sterling, Esqs., original counsel for the petitioners herein, submit an affidavit reflecting the services provided relative to the current proceeding which describes with particularity the services rendered and the time expended in the rendering of such services and which identifies the attorneys who provided such services, including a brief biographical description of each such attorney’s background and experience, and further that Shearman & Sterling, Esqs. submit a true and accurate copy of any written retainer agreement between Shearman & Sterling, Esqs. and the co-committees regarding services rendered in this proceeding or, if there is no written agreement, an affidavit setting forth the sum and substance of any oral retainer agreement between Shearman & Sterling, Esqs. and the co-committees regarding services rendered in this proceeding, and it is further ordered that the *565 petitioners serve a copy of this order upon original counsel, Shearman & Sterling, Esqs., and it is further ordered that inasmuch as the appointment of a guardian for the management of Lewis Davidson Whitehead’s New York property is to be predicated upon his consent thereto, the petitioners are directed, within 15 days after the date of this order, to serve and file proposed findings of fact for the court’s execution, to be settled on 15 days’ notice to Lewis Davidson Whitehead which shall include all necessary findings pursuant to section 81.15 (a) of the Mental Hygiene Law, and it is further ordered that this matter shall be adjourned until 25 days after the date of this order to allow further consideration upon the papers required pursuant to this order. The proposed order and judgment appointing co-guardians for property management shall be held in abeyance until the adjourned date of this matter.

 As in most aspects of the law, absolute statements are not accurate in all circumstances. In Matter of Farmland Dairies v Barber (65 NY2d 51, 55-58) the Court of Appeals closely examined the Full Faith and Credit Clause of the United States Constitution and stated, in part:
"The doctrine does not make a foreign State judgment a judgment in the forum State (Riley v New York Trust Co., 315 US 343). Before that occurs and a locus remedy may be obtained, an action must be brought and a judgment entered on the foreign judgment in the forum State. The doctrine establishes a rule of evidence, however, which requires recognition of the foreign judgment as proof of the prior-out-of-State litigation and gives it res judicata effect, thus avoiding relitigation of issues in one State which have already been decided in another (see, Parker v Hoefer, 2 NY2d 612, cert denied 355 US 833; Durfee v Duke, 375 US 106; Magnolia Petroleum Co. v Hunt, 320 US 430, 438; Riley v New York Trust Co., supra). The rule is not absolute; the judgment of one court is conclusive and binding in another State only if the first court had jurisdiction to render it (Underwriters Assur. Co. v North Carolina Life, supra, pp 704-705; Durfee v Duke, 375 US 106,110, *557 supra), but if the foreign court had jurisdiction * * * the courts of every other State must give it the same credit, validity and effect as it has in the State which rendered it and this is so even though suit could not have been maintained on the cause of action in the forum State (see, e.g., Parker v Hoefer, supra [Vermont judgment for alienation of affections]) or the judgment is based upon a mistake of law (see, e.g., Fauntleroy v Lum, 210 US 230 [action on gambling debt]) * * *
"The courts have stated as a general proposition that criminal judgments are not entitled to full faith and credit because no State is bound to enforce the penal laws of another State or to punish a person for a wrong committed against it (see, Nelson v George, 399 US 224). The rationale for this exception to the constitutional requirement is that each sovereignty is free to determine what conduct shall be proscribed within its jurisdiction and the wrong committed by violating such proscription is local, not transitory. The penal laws within the exception are those which seek to redress wrongs done to the public generally (Huntington v Attrill, 146 US 657, 668). Thus, States have denied recognition to foreign judgments relied upon by one State to recover penalties assessed against a criminal defendant found within their boundaries (see, e.g., Wisconsin v Pelican Ins. Co., 127 US 265, 290; but cf. Milwaukee County v White Co., 296 US 268) * * *
"It is not infrequent in litigation involving multistate contacts or parties residing in different States for conflicting statutory or common-law rules to be implicated in the litigation. The forum State is free to resolve those conflicts and choose the applicable law based upon an evaluation of the State contacts with the parties and the transactions. No constitutional problems arise unless the choice is arbitrary or fundamentally unfair (Allstate Ins. Co. v Hague, 449 US 302, 308; Alaska Packers Assn. v Industrial Acc. Commn., 294 US 532). This case concerns a judgment, however, and the States enjoy no such flexibility in deciding whether they will recognize foreign judgments (see, Allstate Ins. Co. v Hague, supra, p 308, n 10). There are rare cases, other than those involving penal laws, in which the national policy of interstate comity has given way to paramount local interests resulting in a State’s refusal to recognize a foreign judgment (see, Williams v North Carolina, 325 US 226; see also, Alaska Packers Assn. v Industrial Acc. Commn., supra, p 546, and cases cited thereat).” (See also, Fiore v Oakwood Plaza Shopping Ctr., 78 NY2d 572, rearg denied 79 NY2d 916, cert denied 506 US 823.)
Moreover, as discussed infra, in the text of this opinion, a finding of incompetency, diminished mental abilities, lack of capacity or other determination in the court of another State which results in the appointment of a committee, conservator or fiduciary of any other name is not accorded full faith and credit by the courts of New York.