OPINION OF THE COURT
Charles J. Thomas, J.
Petitioner commenced a guardianship proceeding pursuant to Mental Hygiene Law article 81 for the appointment of a guardian for John Topa, an alleged incapacitated person. The petition, while seemingly routine, is anything but.
Petitioner alleges in her petition that her father, the alleged incapacitated person, is not at all incapacitated; rather, she contends that he is competent to care for both his physical and financial needs. Petitioner commenced this guardianship proceeding at the insistence of Holliswood Nursing Home when the administrator of Holliswood refused to honor the alleged incapacitated person’s health care proxy and refused to allow the alleged incapacitated person to leave the facility and return home.
John Topa entered Holliswood Nursing Home on October 27, 2004, having been transferred there from Long Island Jewish Hospital. Mr. Topa, who is 94 years old, had been admitted to the hospital for treatment of a wound he received while his daughter was trying to get him into bed. Long Island Jewish Hospital sent Mr. Topa to Holliswood Nursing Home under the guise that he would benefit from rehabilitation. After several days at Holliswood, Mr. Topa received some physical therapy but it was stopped when his insurance company would not pay. When the physical therapy was stopped, petitioner asked to have her father discharged. The administration of Holliswood told petitioner that they would not discharge Mr. Topa because they believed he was incompetent.
Ms. Topa advised the staff at the nursing home that she was her father’s health care agent and repeatedly requested that he be released. In response, the staff at Holliswood took Mr. Topa’s coat, hat and gloves and attached a tracking device to him to prevent him from leaving the premises.
When the hospital continued to refuse to allow Mr. Topa to leave, petitioner sought legal advice regarding her father’s rights to leave the facility. In November 2004, Mr. Topa retained the services of the same law firm to attempt to assist him in signing himself out. However, the hospital refused to allow him to leave *357 even upon Mr. Topa’s agreeing to sign himself out against medical advice.
Ms. Topa then hired Sherry Zabko-McGuire, a geriatric care manager, to assist in setting up a discharge plan for her father. Ms. Zabko-McGuire evaluated Mr. Topa on January 16, 2005 and he scored a total of 29 out of 30 points on the Folstein Mini Mental Exam. The evaluation by Sherry Zabko-McGuire further determined that Mr. Topa had a high level of capacity and function.
Mr. Topa advised Ms. Zabko-McGuire that he wanted to go home with his daughter, Connie. Ms. Zabko-McGuire evaluated Mr. Topa’s home environment and found it safe, clean and comfortable and appropriately equipped for him to be discharged. However, the nursing home refused to cooperate with Ms. Zabko-McGuire and she had to leave the facility.
During the months Mr. Topa was at Holliswood, the staff repeatedly refused to allow his daughter to take him home even for a brief visit during the holidays. On January 13, 2005, Holliswood applied for Medicaid on behalf of Mr. Topa so they could get paid for his room and board.
In February 2005, the nursing home insisted that Constance Topa commence a guardianship action if she wanted to have her father discharged or to see any of his medical records. She eventually did so and filed the instant proceeding.
Upon signing the order to show cause, the court appointed Richard Spivack, Esq. as temporary guardian. Upon his appointment, Mr. Spivack reviewed the petition and supporting papers. On February 2, 2005, Mr. Spivack went to Holliswood where he met with Mr. Topa’s attorneys, and Ms. Topa, as well as members of Holliswood’s staff. After verifying Mr. Spivack’s appointment as temporary guardian, Mr. Spivack was allowed to speak privately with Mr. Topa for approximately 20 minutes. Mr. Spivack found him competent and lucid and Mr. Topa told him that he wanted desperately to go home. He further related that he was “so lonely,” he had no one to talk to, no television, and no telephone, and he was required to eat most of his meals in his room alone. Mr. Spivack inquired of the staff why Mr. Topa was being kept in the facility and he was advised by the manager of the facility and another member of the staff that there were unspecified medical reasons for doing so. Eventually Mr. Spivack was advised that Mr. Topa wasn’t being discharged because New York City Adult Protective Services had started an investigation of the injury that Mr. Topa had received. However, *358 Mr. Spivack was advised that there would not be any final reports relating to that investigation. The staff also insisted that Mr. Topa’s evaluation was a 22 with 23 being the minimum. Mr. Spivack was not allowed to see the entire medical chart, only those portions selected by Holliswood.
Mr. Spivack then told the administrators of Holliswood that he was taking Mr. Topa home, at which time Mr. Spivack was told that this was against medical advice. Mr. Spivack then inquired as to what was the medical advice for keeping him in the facility. A staff member told him he would have to inquire of Dr. Surinder Ahiya, the medical doctor on staff. Mr. Spivack spoke personally to Dr. Ahiya, who admitted that there was no medical reason to keep him at the facility but that they believed that, based upon an Adult Protective Services complaint, he was never going to be discharged.
Mr. Spivack contacted Miss Flynn, another geriatric evaluator, who indicated similar findings as Ms. Zabko-McGuire. Mr. Spivack arranged for a home health attendant with Partners in Care. Upon doing so, Mr. Spivack signed Mr. Topa out against medical advice and took him home. Mr. Spivack verified with Adult Protective Services that there was no ongoing investigation and the nursing home never followed up with any investigation or did any inquiry in terms of a discharge plan.
Petitioner’s position that Mr. Topa is competent and the testimony by petitioner Constance Topa and the temporary guardian confirms what this court determines from Mr. Topa’s own testimony. Mr. Topa is a competent healthy 94 year old who has good mental faculties and is in reasonably good physical health, given his age. As such, the court finds that petitioner does not need a guardian and that Mr. Topa is sufficiently competent to have executed the previously mentioned valid advance directions.
Petitioner requests that, due to the extraordinary circumstances, the costs of this proceeding be paid by the Holliswood Nursing Home and that sanctions be imposed on Holliswood for its actions. Holliswood, in its posthearing memorandum of law, objects to the imposition of fees and sanctions, claiming that the court lacks jurisdiction over it and that the court does not have the authority to direct a third party to pay costs and fees in an article 81 proceeding.
Article 81 provides for reasonable compensation for the attorney for the petitioner and the special guardian when the court deems it appropriate even if the petition appointing a guardian is not granted. Section 81.16 provides as follows:
*359 “(a) Dismissal of the Petition.
“If the person alleged to be incapacitated under this article is found not to be incapacitated, the court shall dismiss the petition . . .
“(f) When a petition is granted, or where the court otherwise deems it appropriate, the court may award reasonable compensation for the attorney for the petition . . . .” (Emphasis added.)
Initially, the court determines that it has jurisdiction over Holliswood. As the nursing home where Mr. Topa was being held, Holliswood is a necessary party and accordingly was served with the order to show cause and the petition in this case. The petition appointed a temporary guardian, and directed Hollis-wood to release Mr. Topa. The fact that Mr. Spivack was able to secure Mr. Topa’s eventual release does not divest this court of its jurisdiction over Holliswood for the purpose of the relief requested.
In addition to the court’s authority under article 81, the court is empowered to assess legal fees when litigation creates a benefit to another or when an opposing party’s malicious acts cause another to incur the fees. Harradine v Board of Supervisors of Orleans County (73 AD2d 118 [1980]) provided that the fees should be “proximately related to the malicious acts . . . [and] entirely motivated by a disinterested malevolence.” (73 AD2d at 123 [1980].)
Holliswood’s actions in this case created a benefit for itself. By refusing to release Mr. Topa, it hoped to receive money for Mr. Topa’s extended stay, it fulfilled its desire to fill an empty bed and it avoided incurring expenses for the guardianship action.
Holliswood is fully aware of its responsibility to commence a guardianship action where there is a good faith belief that it is unsafe to discharge a resident. It chose instead to do nothing. Assuming any validity to Holliswood’s position that its refusal to honor the health care proxy was due to its concern regarding Adult Protective Services’ questions regarding a safe discharge, it would have been incumbent on Holliswood to commence a guardianship proceeding if it had questions regarding the proxy or the discharge plan presented by the health care agent. In such event, Holliswood would have, upon dismissal, borne the cost of the proceeding, including the legal fees incurred as petitioner in the action.
The only reason that would explain Holliswood’s inaction is that, knowing Mr. Topa was competent and that the petition *360 would eventually be dismissed, it felt that the court would not award attorney’s fees* and that it would be left to foot the bill for the proceedings. The court finds that Holliswood’s reprehensible actions violated the most fundamental rights of Mr. Topa, and offend the consciousness of this court.
Holliswood cannot obviate its legal and financial obligation by choosing instead a course of action which required Mr. Topa’s daughter to commence the petition in order to free her father from its unlawful custody. The obligation to pay attorney’s fees must be imposed on Holliswood.
Furthermore, the court cannot consider or give credence to the numerous letters attached to Holliswood’s posthearing memorandum, as they are hearsay correspondence and cannot be directly attributed to Mr. Topa. The record is clear that Hollis-wood was served with the petition and the action was adjourned with notice to Holliswood for the specific purpose of allowing it the opportunity to present testimony, evidence or argument to the court. Holliswood chose not to appear and as such has waived its objections to petitioner’s applications.
Petitioner’s request for sanctions under CPLR 8303 is denied in light of the above. It is sufficient that Holliswood bear the costs incurred in connection with the petition. Were it not to do so, the court would have unhesitatingly considered awarding at least a like amount as sanctions for Holliswood’s action.

 In Matter of Gaskell (NYLJ, Mar. 1, 1994, at 27, col 2 [Sup Ct, Suffolk County]), the court found that where a nursing home needlessly put a family through a guardianship proceeding the nursing home could not recover its fees.