■ In the Matter of JOHN T. CONSTANCE T., Respondent. HOLLISWOOD CARE CENTER, Nonparty Appellant. [839 NYS2d 783]—

In a proceeding pursuant to Mental Hygiene Law article 81 for the appointment of a guardian for the personal needs and property management of John T., the nonparty Holliswood Care Center appeals from an order and judgment (one paper) of the Supreme Court, Queens County (Thomas, J.), entered January 26, 2006, which, upon a decision of the same court dated November 1, 2005, made after a hearing, and upon a determination that John T. is not an incapacitated person within the meaning of Mental Hygiene Law article 81, granted the application of the petitioner, the temporary guardian, and Mental Hygiene Legal Service for an award of attorneys' fees and disbursements, and is in favor of them and against it in the principal sum of $26,126.17.

Ordered that the order and judgment is reversed, on the law, with costs, and the application for an award of attorney's fees and disbursements is denied.

The alleged incapacitated person (hereinafter Mr. T.), a 93-year-old man was, as demonstrated by the record, fully competent, and found to be so by the Supreme Court. The petitioner, Mr. T.'s daughter, lived with and cared for him for many years.

On October 22, 2004 Mr. T. was admitted to Long Island Jewish Hospital for treatment of what appeared to be a human bite mark on his arm following a complaint made to Adult Protective Services (hereinafter APS) by a Meals-On-Wheels volunteer. On October 27, 2004 he was admitted to the nonparty Holliswood Care Center (hereinafter Holliswood ) for rehabilitation. Thereafter, despite the requests of both Mr. T. and the petitioner that Mr. T. be permitted to return home, the petitioner claimed that Holliswood wrongfully refused to permit him to leave for

more than three months. Holliswood alleged that its reluctance to discharge Mr. T. arose from safety concerns and not those relating to his competence, and that Mr. T. was not discharged because APS did not believe that it was safe for him to return to the petitioner's care. On two occasions, Mr. T.'s attorneys were physically prevented from removing him from Holliswood. On the latter occasion, the police intervened, preventing Mr. T.'s removal for a dental appointment. In addition, Holliswood did not allow Mr. T. to go home for the holidays in December. Ultimately, Holliswood informed the petitioner that if she wanted Mr. T. discharged, she would have to commence a guardianship proceeding.

The petitioner hired a geriatric social worker (hereinafter the social worker) to evaluate Mr. T.'s cognitive abilities and to assist in setting up a discharge plan for him. The social worker administered cognitive tests to Mr. T. while he was at Holliswood, including a "mini-mental status examination," on which he scored very high, indicating that he was competent and not eligible for nursing home placement on the basis of incompetency.

On February 2, 2005 the petitioner filed an order to show cause with a petition requesting, inter alia, the appointment of a temporary guardian and alleging, among other things, that Holliswood "unlawfully detained" Mr. T. Upon receipt of the order to show cause, Holliswood contacted the court by phone, expressing its concern for Mr. T.'s safety, but agreeing to be bound by the decision of a temporary guardian appointed by the court, into whose care Mr. T. was discharged on that date. The guardianship hearing originally scheduled for March 1, 2005 was adjourned to March 16, 2005. Holliswood did not appear at the hearing, explaining in a posthearing memorandum that it had not done so because Mr. T. already had been discharged, it had no knowledge of the March 16, 2005 adjournment since the stipulation to adjourn had not been received by it, and, in any event, since Mr. T. already had been discharged, it was no longer an interested party and therefore was not entitled to notice of the guardianship proceeding.

At the March 16, 2005 guardianship hearing, the temporary guardian confirmed Mr. T.'s competency, opining that the sole reason Holliswood detained Mr. T. was its unsubstantiated claim of his incompetency. The petitioner presented extensive evidence describing the various ways in which Mr. T. was prevented from leaving Holliswood. Without hearing any evidence from Holliswood on this issue, the Supreme Court found that "Holliswood's reprehensible actions violated the most fundamental

rights of Mr. T[.], and offend the consciousness [sic] of this Court" (see 10 Misc 3d 355, 360 [2005]). In concluding that Holliswood must pay, inter alia, the petitioner's attorneys' fees, the court stated, "Holliswood cannot obviate its legal and financial obligation by choosing instead a course of action which required Mr. T[ ]'s daughter to commence the petition in order to free her father from its unlawful custody. The obligation to pay attorneys' fees must be imposed on Holliswood" (id.). A judgment awarding attorneys' fees and disbursements in the principal sum of $26,126.17 in favor of the petitioner, the temporary guardian, and Mental Hygiene Legal Service and against Holliswood was entered on January 26, 2006. Holliswood subsequently filed a motion for leave to reargue, objecting to the court's conclusion that it refused to discharge Mr. T. because it believed that he was incompetent, insisting that it should have been afforded the opportunity to present evidence that the discharge of Mr. T. was "an issue of safety, not of competence." Holliswood further claimed that material issues of fact existed that had not been resolved through testimony or other evidence. Holliswood appeals and we reverse.

In the absence of notice to Holliswood, the Supreme Court improperly proceeded with the hearing and improvidently awarded attorneys' fees and disbursements as against it. Holliswood should have been informed that the guardianship hearing would serve as a factual predicate for the award of attorneys' fees and disbursements against it, particularly since the petitioner had only requested in her papers that her attorneys be paid a reasonable fee from Mr. T.'s assets. The Supreme Court should have advised Holliswood that it was considering the imposition of fees and costs and/or sanctions, and afforded it a full opportunity to be heard in order to explain why it had refused to release Mr. T. from its facility for more than three months (see Matter of Griffin v Panzarin, 305 AD2d 601, 603 [2003]; Kelleher v Mt. Kisco Med. Group, 264 AD2d 760, 761 [1999]; Morrison v Morrison, 246 AD2d 634 [1998]).

In any event, the award of attorneys' fees and disbursements against Holliswood was not authorized by Mental Hygiene Law article 81, which allows for the award of reasonable compensation for, inter alia, court evaluators, court-appointed counsel, and a petitioner's attorney, the sources of this compensation being the assets of the incapacitated person, unless indigent, and/or the assets of the petitioner (see Mental Hygiene Law § 81.09 [f]; 81.10 [f]; 81.16 [f]; see also Matter of Lukia QQ., 27 AD3d 1021, 1023 [2006]; Matter of Grace PP., 245 AD2d 824, 825 [1997]; Matter of Astor, 14 Misc 3d 1201 [A], 2006 NY Slip

Op 52365[U] [2006]; *Matter of Whitehead,* 169 Misc 2d 554, 560-561 [1996]; *Matter of Epstein,* 168 Misc 2d 705, 708 [1996]; *cf. Matter of Ruth Q.,* 23 AD3d 479 [2005]; *Matter of Gaskell,* NYLJ, Mar. 1, 1994, at 27, col 2; *Matter of Sherman,* 277 AD2d 320, 321 [2000]).

Nor was there justification under the common law for the assessment of attorneys' fees and disbursements against Holliswood. The courts of this state have recognized exceptions to the general rule that attorney's fees are not recoverable absent a contractual or statutory liability, e.g., when the opposing party's malicious acts cause a person to incur legal fees, and when the litigation creates a benefit to others (*see Harradine v Board of Supervisors of Orleans County,* 73 AD2d 118, 122 [1980]). Certainly, under the circumstances of this case, where Holliswood was not given a full opportunity to explain its actions, there was no reasonable basis for the Supreme Court to conclude that Holliswood's actions were "malicious acts [that caused] a person to incur legal fees" (*id.*), or "malicious or tortious conduct proximately caus[ing] it to incur legal fees" (*Huling v Copp,* 175 AD2d 572, 573 [1991]), or "tortious" (*Central Trust Co., Rochester v Goldman,* 70 AD2d 767, 768 [1979]), or constituting "malice" or "entirely motivated by a disinterested malevolence" (*United Pickle Co. v Omanoff,* 63 AD2d 892, 892-893 [1978]).

Accordingly, the Supreme Court improvidently exercised its discretion in granting the application for an award of attorneys' fees and disbursements incurred by, among others, the petitioner. Schmidt, J.P., Mastro, Carni and Dickerson, JJ., concur.