In a consolidated proceeding pursuant to Mental Hygiene Law article 81 to appoint Simon S. as the guardian of the person *955 and property of his brother, Samuel S., an alleged incapacitated person, and for a writ of habeas corpus, in which Helene S., a sister of Samuel S., cross-petitioned to have herself appointed as the guardian of the person and property of Samuel S., the petitioners appeal, as limited by their brief, from so much of an order of the Supreme Court, Kings County (King, J.), entered September 29, 2011, as, after a nonjury trial, granted the cross petitioner’s motion pursuant to CPLR 4401 for judgment as a matter of law dismissing the petition, made at the close of the petitioners’ case, fixed the fees of the court evaluator and the court-appointed psychiatrist without a hearing, and directed the petitioner Simon S. to personally pay the fee of the court evaluator.
Ordered that the order is modified, on the law, by deleting the provisions thereof, without a hearing, fixing the fees of court evaluator Julie A. Clark in the sums of $18,950.60 and $18,950 and fixing the fees of court-appointed psychiatrist Dr. James Lynch in the sum of $4,275; as so modified, the order is affirmed insofar as appealed from, with costs payable by the petitioner Simon S., personally, and the matter is remitted to the Supreme Court, Kings County, for a hearing on the reasonable amount of fees to be awarded to Julie A. Clark and Dr. James Lynch, and an award of fees thereafter.
This Mental Hygiene Law article 81 guardianship proceeding was commenced by the filing of a petition dated July 11, 2010 (hereinafter the petition), on behalf of Samuel S., an alleged incapacitated person (hereinafter the AIP), by his brother Simon S. (hereinafter Simon). Simon, an attorney, appeared pro se in this proceeding on behalf of himself and the AIP
The petition requested that Simon be appointed as the guardian of the AIP’s personal needs and property, pro bono, with the power, inter alia, to appoint a sister of Simon and the All) Risa K. (hereinafter Risa), as the AIP’s primary caretaker, relocate the AIP from the home of another of his sisters, the cross petitioner, Helene S. (hereinafter Helene), where the AIP has lived since 2007, and collect the AIP’s assets and pay his expenses. In the alternative, the petition sought an order pursuant to Mental Hygiene Law § 81.16 (b) declaring that a power of attorney, which the AIP allegedly executed on January 21, 2010 (hereinafter the 2010 power of attorney), appointing Simon as his attorney-in-fact, had been ratified.
In opposition, Helene cross-petitioned to void the 2010 power of attorney and, if the appointment of a guardian were deemed to be appropriate, to appoint her as the AIP’s guardian. Alternatively, Helene argued that the petition should be *956 dismissed on the ground that the existence of advance directives, in the form of a power of attorney, which the AIP granted her in 2004, and a health care proxy, which he granted her in 2008 (hereinafter together the advance directives), obviated the need for a guardian.
Upon Simon’s application, the proceeding for the appointment of a guardian was consolidated with a prior proceeding he had commenced for a writ of habeas corpus, based on allegations that Helene and her husband unlawfully detained and isolated the AIP, caused his physical and emotional health to deteriorate, and misappropriated his assets.
The consolidated matter proceeded to a hearing, which commenced on August 11, 2010, and ended on June 22, 2011. The proceedings included the Supreme Court’s personal interview of the AIP at his home, the testimony of court evaluator Julie A. Clark, who was initially appointed in the habeas corpus proceeding and reappointed in this proceeding, and the testimony of the court-appointed psychiatrist, Dr. James Lynch. In addition to testifying, Clark submitted two detailed reports regarding her findings, based on three interviews with the AH) interviews with the AIP’s five doctors, and interviews with his siblings, including Simon and Helene. Clark also consulted with the AIP’s financial advisor, and Dr. Lynch submitted his evaluation as well. The hearing also included the testimony of clinical and forensic psychiatrist Dr. Steven K. Hoge, whom Simon retained, and a neuropsychologist also retained by Simon, whose testimony was stricken from the record after Simon directed her not to return to court for the completion of her testimony.
Clark both testified and reported that, although there was uniform consensus that the AIP was cognitively impaired, of the AIP’s eight living siblings, only Risa and Simon believed that Simon should be appointed as the AIP’s guardian or that the AIP should be relocated from his home with Helene. The Supreme Court’s personal interview of the AIP at his bedside confirmed that the AIP’s physical and mental health abilities are highly compromised, and that he was receiving a desirable level of care in Helene’s home, where he lived with her and her husband, along with his and Helene’s mother. The AIP received 24-hour-a-day care, provided by three full-time home health aides, could be moved from his room by an elevator when required to travel to his doctors, and had a flat-screen television near his bed which enabled him to speak with his family in Israel Ada Skype, a voice-over-internet protocol service. Although Clark recommended that Helene be appointed as the AIP’s guardian, she noted that, if the court found that the advance *957 directives were sufficient, there may not be a need for a guardian.
At the close of the petitioners’ case, Helene moved pursuant to CPLR 4401 for judgment as a matter of law dismissing the petition. The Supreme Court granted the motion, and, without a hearing, fixed Clark’s fees as court evaluator and Dr. Lynch’s fees as the court-appointed psychiatrist, and directed Simon personally to pay Clark’s fees.
Mental Hygiene Law article 81 confers upon the court the discretion to determine whether a guardian should be appointed for an alleged incapacitated person (see Mental Hygiene Law art 81). Mental Hygiene Law § 81.02 requires a two-pronged determination: (1) that a guardian is “necessary to provide for the personal needs of that person, including food, clothing, shelter, health care, or safety and/or to manage the property and financial affairs of that person” and (2) “that the person agrees to the appointment, or that the person is incapacitated” (Mental Hygiene Law § 81.02 [a] [1], [2]; see Matter of William C., 64 AD3d 277, 288 [2009]; Matter of Daniel TT., 39 AD3d 94, 97 [2007]; Matter of Maher, 207 AD2d 133, 139-140 [1994]). The petitioner has the burden of establishing the AIP’s incapacity and need for a guardian by clear and convincing evidence (see Mental Hygiene Law § 81.02 [b]; § 81.12 [a]).
The statutory guidelines require the court to consider the report of the court evaluator (see Mental Hygiene Law § 81.02 [a]) and the “sufficiency and reliability of available resources” (Mental Hygiene Law § 81.02 [a] [2]) to satisfy the AIP’s personal needs and property management without the need for a guardian (see Mental Hygiene Law § 81.02 [a]). “[Available resources” include home care providers, powers of attorney, health care proxies, and trusts (Mental Hygiene Law § 81.03 [e]).
Here, the Supreme Court properly granted Helene’s motion pursuant to CPLR 4401 for judgment as matter of law dismissing the petition at the close of the petitioners’ case, since Simon failed to establish a prima facie case. Although the evidence demonstrated that the AIP was unquestionably incapacitated, Simon failed to establish by clear and convincing evidence that a guardian was needed to provide for the AIP’s person or property (Mental Hygiene Law § 81.02 [a] [1]), since the advance directives were already in place and, as implemented by Helene, provided the AIP with a “high quality of comprehensive medical care whose cost exceeds the AIP’s income” and provided for the management of his personal and property needs, “consistent with the statutory goal of requiring dispositions which are the *958 least restrictive form of intervention” (see Mental Hygiene Law §§ 81.01, 81.02 [a]; Matter of May Far C., 61 AD 3d 680, 680 [2009]; Matter of Isadora R., 5 AD3d 494 [2004]; Matter of Maher, 207 AD2d at 139-140).
Contrary to Simon’s contention, the Supreme Court properly determined that the 2010 power of attorney was invalid as a matter of law, based, inter alia, on Simon’s admissions that he had the AIP’s signature notarized the day after the AIP executed the document under false pretenses. The circumstances surrounding the execution and notarization of the 2010 power of attorney rendered it ineffective to revoke the power of attorney which the AIP granted to Helene in 2004.
Although the Supreme Court had the authority to determine the reasonable compensation of Clark and Lynch (see Mental Hygiene Law § 81.09 [c] [7]; [f]), it improperly fixed their fees without holding an adversarial hearing (see Matter of John T., 42 AD3d 459, 462 [2007]; Matter of Susan P., 243 AD2d 568, 569 [1997]; Matter of Stark, 174 AD2d 746, 748 [1991]). Further, the Supreme Court failed to provide, in writing, a clear and concise explanation of the factors it considered and its reasoning in arriving at the amounts it awarded to Clark and Lynch (see Matter of Theodore T. [Charles T.], 78 AD3d 955, 957 [2010]; Matter of Nebrich, 23 AD3d 1018, 1019 [2005]; Matter of Specht, 265 AD2d 919, 919 [1999]). Accordingly, this matter must be remitted to the Supreme Court, Kings County, for a hearing, taking into consideration the appropriate factors (see e.g. Matter of Theodore T. [Charles T.], 78 AD3d at 957; Matter of Nebrich, 23 AD3d at 1019; Matter of Specht, 265 AD2d at 919).
Nevertheless, the Supreme Court properly exercised its discretion in directing Simon personally to pay Clark’s fees in their entirety, as Simon’s motives in commencing this proceeding were questionable, given his knowledge of the existence of the advance directives and the lack of any evidence that the AIP had suffered any manner of harm or loss, circumstances that were confirmed by the court evaluator (see Matter of Crump [Parthe], 230 AD2d 850, 851 [1996]; Matter of Rocco, 161 Misc 2d 760 [1994]).
Simon’s remaining contentions either are without merit or need not be reached in light of our determination. Dillon, J.P., Eng, Austin and Sgroi, JJ., concur. [Prior Case History: 33 Misc 3d 1203(A), 2011 NY Slip Op 51770(U).]